## 18300

S. E. BETTERSON, Marshall Brantley and Joseph Orr, Individually, and as Electors, Taxpayers, and Parents of Negro School Pupils of Jasper County High and Elementary Schools, and on behalf of themselves and all others similarly situated, Appellants, v. Paul Allen STEWART, Individually and as Supervising Principal teacher of Area No. 1, Jasper County Negro High and Elementary Echools, Respondent.

(140 S. E. (2d) 482)

*Messrs. Frank E. Cain, Jr.,* of Bennettsville, *John H. Wrighten,* of Charleston, and *John E. McCall,* of Cheraw, *for Appellants,*

*Messrs. Luke N. Brown, Jr.,* and *Walker & McKellar,* of Ridgeland, *for Respondent.*

February 9, 1965.

BUSSEY, Justice.

In a former appeal in this case, *Betterson v. Stewart,* 238 S. C. 574, 121 S. E. (2d) 102, the decision of the lower court was affirmed in part and reversed in part, and the case remanded for further proceedings. Presently, there are two causes of action involved.

In the first cause of action the plaintiffs, as electors, taxpayers and parents of Negro school pupils in Jasper County High and Elementary Schools, sought an accounting from the defendant Stewart, supervising principal of said schools, with respect to an account designated as the "Jasper High School General Fund", of which fund the said Stewart had supervision and control. In the second cause of action plaintiffs sought to recover from the said Stewart any misappropriation.

Upon remand, and upon agreement of counsel, the matter was referred by the circuit court to D. N. Rivers, Esquire, of the Ridgeland Bar, as special referee, before whom several hearings were conducted over a period of nearly one year, and considerable testimony taken.

The special referee construed the prior opinion of this court, without objection from counsel, as eliminating the school year 1958-59 from the period of time for which an accounting was required, and confined the reference to the school years 1955-56, 1956-57, and 1957-58.

All of the records of Stewart, in his possession or in his office at the school, were surrendered to the referee, made available to counsel, and to a public accountant, one Jesse W. Braswell, engaged by the referee, with the consent of counsel, for the purpose of auditing the records pertaining to the fund and making a report of his findings. While these records were available and physicially present, counsel for neither side saw fit to formally introduce them in evidence and they are not before this court. The report of Mr. Braswell covering the three years in question is a part of the record. The special referee concluded that the method of keeping records during the school years in question was a very poor method, but found there was no shortage of funds; that the defendant had made an accounting, and recommended that the causes of action be dismissed.

Upon exceptions to the referee's report, the circuit court affirmed, specifically stating that there was no evidence upon which a finding of a shortage in the fund could be based, and that in the court's opinion, Stewart had adequately accounted for the administration of the fund. From this order of the circuit court the plaintiffs appeal.

Appellants' exceptions are seven in number. Exceptions numbers 6 and 7 are clearly not framed in accordance with Rule IV, Section 6, of the Supreme Court Rules, and need not be considered. The remaining exceptions are so framed that it is, at best, difficult to ascertain precisely what issues,

if any, are properly before us for decision. When they are considered in the light of the concessions and arguments in the brief of appellants, and in the light of the issues which were raised and passed upon by the special referee and the circuit judge, our task becomes even more difficult. No exception specifically challenges the finding of fact by the special referee, concurred in by the circuit judge, that there was no evidence from which it could be concluded that there was any shortage in the funds. Moreover, appellants, in their brief, concede that the figures set out in the statement of receipts, as shown by the report of the public accountant, are correct.

Since, however, Stewart was a school principal and occupied the position of a trustee with respect to the fund or bank account involved, we shall attempt to pass upon all the arguments or contentions of the appellants which are, conceivably, properly before us. In the opinion of the court, on the former appeal, it was pointed out that Stewart had promoted various fund raising activities on the part of the teachers and pupils of the school for the purpose of paying the cost of some of the desired additions to the normal school program "not covered in the regular school budget, such as the purchase of athletic equipment, choir robes, aids for classroom activities, etc."

The present appeal is, at least in large part, based on the construction which counsel for appellants places upon the above quoted language, counsel construing such language as having limited the use of the fund involved, as a matter of law, to the specific items mentioned in the quoted language, or at least to items of the same general character.

Contrary to the construction of counsel, the language in the opinion relied upon was only narrative and descriptive with respect to the general situation giving rise to the controversy between the parties. There is nothing in the former opinion of this court, or in the record, which spells out specifically and exclusively, either as a matter of agreement or

a matter of law, precisely what funds could be deposited in and withdrawn from the bank account which was designated as "Jasper High School General Fund."

As a matter of fact, the record before us shows that during the years in question the "Jasper High School General Fund" was not literally a fund, but was simply a bank account in which various monies, raised in various ways, for various purposes, and from many different sources, were deposited in a single account for convenience. The report of the public accountant shows that the total amount deposited in the bank in this account, over the period of three years, was in excess of $35,000, and that the sources of such funds and the expenditure thereof, involved in excess of twenty different categories, including, but not limited to, the categories mentioned generally in the prior opinion of this court.

The evidence reflects that no permanent ledger was kept wherein the funds received for these various categories or the expenditure therefrom were entered. While the entire account was under the supervision and control of Stewart with only Stewart being able to write checks on the bank account, it appears that virtually all, if not all, of the record keeping was done by Stewart's secretary. She used in connection with the fund duplicate receipt books. Twelve of these duplicate receipt books were located and turned over to the accountant and the referee. They were dated, in chronological order and only one receipt book, covering a period of less than one month during the early part of the three year period could not be located.

In many instances, the secretary did not completely fill out the receipts other than as to amounts. Many of the receipts did not show precisely what the payment was for, and, in addition, the accountant determined and testified that the receipt books, from time to time, had been used for issuing receipts in purely personal matters having nothing to do with any category of the general fund. Accordingly, it was impossible for the accountant or the referee to reconcile the bank deposits with the receipt books. The accountant did,

however, have available the bank statements, deposits and canceled checks, and it is upon these that his report is based, and his report shows no shortage in the fund insofar as it could be checked through these documents. As previously pointed out, appellants now concede that the figures set forth in the report of the accountant as to the receipts are correct and there is no contention that Stewart received any money which was not deposited in the bank account.

The appellants presently make no contention with respect to most of the more than twenty different categories of funds deposited in the one bank account. Their arguments and contentions involve only four of said categories, which we shall now consider. The record reflects that this bank account was used for the purpose of paying substitute teachers, and appellants contend that funds raised from the pupils were used for the purpose of paying such substitute teachers. This contention is totally without merit as all of the evidence in the record is to the effect that there was no appropriation for the purpose of paying substitute teachers, and that any time a regular teacher was absent, on account of illness or otherwise, the absent teacher was required to pay into the general fund the amount of money necessary to pay a substitute teacher, and then a check was drawn on the bank account for such amount to compensate such substitute teacher. The evidence is to the effect that all absent teachers so paid and there is not an iota of evidence to support the contention of the appellants that any funds raised from the students were used for such purpose.

Checks were drawn on the bank account for the purpose of paying teacher association dues, and also for the purpose of making certain gifts or donations. It is argued that such expenditures were inconsistent with the objectives of the general fund because students should not be required to finance the membership of teachers in organizations, or purchase gifts for the benefit of private individuals. Again, the record shows such contention on the part of the

appellants to be totally without merit. All of the evidence is to the effect that the teachers paid their association dues into the office of the principal, and the same were deposited in the bank account and then one check drawn thereon in payment of the association dues so collected. With respect to gifts or donations, all of the evidence is to the effect that from time to time money was raised in the school for specific charitable purposes, such as people being burned out, or other distressing situations, such as death, hospitalization, etc., concerning students or their families. There is no evidence tending to prove that any disbursements were made from the general fund or bank account for charitable purposes, other than monies raised for such specific charitable purposes and deposited in the general fund.

With respect to the items just discussed, they were simply categories, included among many other categories, for which the one bank account was maintained as a matter of convenience, and there is not an iota of evidence tending to show that any money was diverted from one category to another, wrongfully or otherwise.

The only really serious question presented by the appeal is with respect to "loan on salaries" made during the three year period from the bank account to various teachers in the school, which loans over a period of time totalled slightly in excess of $4,000. Since it does not appear that any monies were raised and deposited in the bank account for the purpose of making such loans, it clearly follows, as held by the circuit judge, that Stewart had no right or authority to make such loans. It follows that he should be held to strict accounting in connection therewith. In fairness to Stewart, it should be pointed out that the record does not reflect that he was the recipient of any such loan.

Due to the manner in which the secretary kept the duplicate receipt books, and in the absence of a permanent ledger, it was impossible for the accountant or the special referee to trace each individual loan and determine from the records

that it was, in fact, repaid. Stewart testified to the fact that they had all been repaid. He further testified that in the beginning such loans were made without any interest being paid thereon by the teachers, but that thereafter he appointed a committee of the teachers to work out a satisfactory interest rate in connection with said loans, and that thereafter the loans were not only repaid; but repaid with interest. There is no evidence to the effect that such loans were not repaid in full. It was brought out that a number of the teachers involved were no longer connected with the school and not readily available. Among other things, appellants now contend that the special referee and the circuit judge should not have approved Stewart's accounting with respect to the loans to teachers because his testimony to the effect that all such loans had been repaid was uncorroborated by the records or otherwise. This argument could be disposed of by pointing out that, insofar as the record reflects, this precise contention was not made before either the special referee or the circuit judge. Had the point been properly raised below, the special referee and/or the circuit judge may very well have required of Stewart a higher or stricter degree of proof with respect to the repayment of these loans.

As the matter now stands, we have the concession of the appellants that the figures shown in the statement of receipts prepared by the public accountant are correct, and a concurrent finding of fact by the special referee and the circuit judge to the effect that there is no shortage in the fund. This concurrent finding of fact is neither without evidentiary support, nor against the clear weight of the evidence, and is moreover, not specifically challenged by any exception of the appellants. With respect to these loans, the circuit judge had the following to say:

"Despite the fact that I do not believe these loans were proper, there is no evidence to warrant a conclusion that the fund has been in anywise depleted or impaired by the making of these loans."

The making of the loans to the teachers from this bank account was, of course, improper and should in no sense be condoned. The system of record keeping certainly left much to be desired. In fairness to Stewart, however, it should possibly be pointed out that, while he occupied the position of a trustee, his services in such capacity were gratuitous, and the duties and responsibilities in connection therewith were in addition to his other duties and responsibilities as principal. There is nothing in the record before us which would even suggest that he in any manner personally profited from the funds entrusted to his care, and nothing from which it could be reasonably concluded that anyone has been financially damaged as a result of his manner of handling such funds.

The exceptions of the appellants, considered in the light of their brief and the questions raised below, do not present any issues entitling them to any relief in this court. The judgment of the lower court is, accordingly, affirmed.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.