GILLESPIE, Presiding Justice:
The International Order of Twelve, Knights & Daughters of Tabor, a nonprofit corporation, hereinafter for brevity called Tabor, sued Cora Lee Marshall, hereinafter called defendant, for an alleged misappropriation of funds. After a full hearing on the merits the chancery court entered a decree in favor of defendant and dismissed the bill of complaint.
The main questions involved in this appeal are: (1) whether the chancellor was manifestly wrong in finding that Tabor failed to meet the burden of proving that defendant misappropriated the funds; and (2) whether the proof was sufficient to raise a presumption of fraud on the ground that defendant was a fiduciary, thereby shifting to defendant the duty of explaining the shortage.
Defendant was the head bookkeeper of Tabor, which operated a hospital and had an income of about $300,000 per year from local organizations and other sources. Funds were received by mail and personal delivery and were sometimes delivered to individual employees at their homes. The finance office, in which defendant was the head bookkeeper, was operated by five employees. The Chief Grand Scribe of Tabor was over these employees, but he did not stay in the office. The funds coming into the finance office consisted of money orders and cash. Defendant and another employee handled the money when it came into the office and put it in the safe, the combination to which was known by defendant and one Flotilla Norman, another employee. The receipts were entered on a cash book. Bills were paid in cash and no receipts taken; the record of the cash out *68 lay was entered in the cash book under “Disbursements.” The money was then deposited in various banks where Tabor carried accounts, and these deposits were listed under “Disbursements.” During the period from December 1, 1961, through November 30, 1962, there was an alleged shortage of $9,836.33; the cash received from various sources was $286,735.77; the amount deposited to Tabor’s accounts in banks was $263,870i29, and $13,029.15 was shown to have been paid out in cash for postage, various expenses, loans, etc., leaving the shortage already mentioned.
The audit on which Tabor relied to prove that defendant had misappropriated the funds which the books showed as a shortage, consisted of a listing of receipts from various sources and the disposition of the cash receipts by deposits in banks and the amounts paid out in cash for various items as mentioned. The testimony of Tabor’s auditor and an auditor introduced by defendant showed that there was no way to audit the cash account against other records. The single entry set of books consisted of a listing of what came in and what was paid out and deposited in banks.
The chancellor stated that Tabor’s books were very poorly kept; that it was highly likely that dishonesty was involved, and that it was most likely that defendant took the missing funds. He further stated, however, that there was no direct evidence that defendant took any money and that other persons in the office had access to the money after it came into the office. He found that the bookkeeping system was such that defendant would not necessarily know that someone else was wrongfully taking funds. He also found that defendant and her family spent funds in excess of their apparent incomes, and he took this into consideration in reaching his decision.
However, the chancellor concluded that despite highly suspicious circumstances and the probability of defendant’s guilt, the evidence was not sufficiently clear and convincing to justify a finding that defendant was guilty of embezzlement.
This is a close case on the facts, but we are not able to say that the chancellor was in error in finding that the proof was-too unreliable to justify a finding that defendant embezzled her employer’s funds. The books were sent to this Court. The record of cash receipts and disbursements contain entries in pencil and ink without any indication in some instances as to who received the money. The oral proof showed that some loans to officials and employees were made without any record whatever.
The chancellor relied on the following quotation from Griffith’s Mississippi Chancery Practice section 589 (1950), towit:
There is a presumption against bad motive, dishonesty, and fraud. If such be material the proof thereof must be strong. Fraud is not a thing to be lightly charged and most emphatically is not a thing to be lightly established. The stigma which follows from it is not to be placed upon parties unless the evidence is sufficient to satisfy the court, not by a mere preponderance, but clearly and convincingly, of the truth of fraud, * * * the proof must be clear and convincing.
Tabor’s second contention is based on the premise that great confidence was placed in defendant by her employer; that she received the money and maintained the books, and that upon the showing of a shortage of funds, a presumption of fraud arose which placed on defendant the burden of showing a proper disposition of the funds. Tabor cites a number of our cases on constructive trusts, including Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926). We are of the opinion that the cases on constructive trusts are not applicable. In each of those cases the fact that property was received by the person in a fiduciary capacity was shown without question. The general rule is that fraud is presumed in that type case where there is clear and convincing proof that *69 (1) a confidential relationship existed between the parties, and (2) there was a transfer of property, or a gift made, or a devise made in favor of the dominant party. In such cases the fiduciary then has the duty of rebutting the presumption. Saulsberry v. Saulsberry, 232 Miss. 820, 100 So.2d 593 (1958).
 The problem in the present case is with the proof concerning whether defendant took the money. There is no presumption that will aid in proving that defendant actually received the money. That fact must be proved by clear and convincing evidence. We are unwilling to hold that a presumption should bolster unsatisfactory evidence as to whether defendant misappropriated her employer’s funds. In other words, the evidence fell short of establishing clearly and convincingly that defendant received the funds, and the case against her is not aided by any presumption. If the evidence had been sufficient to trace the money into the position of defendant, the burden of accounting for the funds would then be on defendant.
Tabor offered evidence that defendant and members of her family lived beyond their means and spent more money than their apparent incomes. Tabor contends the evidence in this regard was sufficient to require more explanation on the part of defendant than she offered. This evidence and the other testimony caused the chancellor to refer to the “extremely suspicious circumstances” attending the case. The proof regarding defendant’s family expenditures is not sufficient to cause reversal of the case. The chancellor’s opinion shows that he took this into account in making his findings.
We are therefore of the opinion that the case should be and it is affirmed.
Affirmed.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.