RODGERS, Justice:
The Trustees of the Western Line Consolidated School District brought suit in the name of the State of Mississippi against Hiram B. Eakin and his surety, The Aetna Casualty and Surety Company, for an accounting and a judgment for an alleged deficit in the funds entrusted to him as Principal of Glen Allen Attendance Center.
The original complaint was filed in the Chancery Court of Washington County, Mississippi. An answer was duly filed, and evidence was introduced by both sides in the trial before the chancery judge. At the conclusion of the trial, the chancellor entered a decree “upon the merits,” dismissing the original bill in favor of the defendants.
A detailed study of the record in this case can lead to but one conclusion: The complainant did not establish by a preponderance of the evidence that the defendant, Hiram B. Eakin, failed to account for, or that he misappropriated, money coming into his hands belonging to the school or students of Glen Allen Attendance Center.
The record shows beyond question that the defendant received money from the students, or from the school activities, for one purpose or on one account, and he directed the bookkeeper to apply the funds to the account payable in another fund. For example, he received money from the students to order caps and gowns, but he took the fund and purchased an electric fan for the cafeteria. He used funds paid in by students to be used for a certain purpose and applied these funds to other school activities, different from those for which the funds were advanced by the students.
The testimony in this case borders upon, but does not show, a deliberate misuse of funds entrusted to the care of the Principal to be used for a specific purpose. There is no specific statute dealing with what a school principal may or may not buy for the *589 use of the school; and from the facts shown in this case, it is obvious that some statutory restrictions or statutory guide rules should be established to limit the fund-raising and spending activities of a school principal in the performance of his official duty. The record in this case shows that the defendant received funds that he did not deposit in the bank, but used them to pay bills the school incurred for the school as accounts payable out of the activities fund. When the testimony is thoroughly sifted — taking his explanation to be true since the chancellor believed his testimony —it is apparent that the defendant simply purchased more material for the use of the school than he had funds with which to pay. In short, his accounts payable exceeded his receipts.
On the other hand, had the chancellor disbelieved the explanation offered by the defendant and his auditors, this Court would have followed the holding of the chancellor because there are many instances shown by the testimony from which the chancellor could have reasonably determined that the defendant failed to account for funds entrusted to him, for example, his failure to show the amount of receipts from athletic activities. Moreover, the defendant had no authority to lend the funds entrusted to him to the janitor. The defendant claims, however, that the janitor repaid most of his loan. Nevertheless, the Principal had no right to convert the funds belonging to others to a project of his own.
We have read the authorities cited by the appellant[1] and appellee[2] and a careful reading of the cases cited by appellant, school trustees, has convinced us that they are not controlling in the instant case.
Mississippi Code Annotated Section 6282-04.5 (1952) (Supp.1966); Laws of 1960, Ch. 318, provides that:
“1. The superintendent of a county school district * * * before entering upon the duties of his office, shall furnish a good and sufficient surety bond * * * conditioned upon the faithful performance of the duties of his office, including the proper administration of all activities funds and other funds of the district. * * *
“2. The principals of attendance centers * * * shall furnish good and sufficient surety bonds in like manner as required of superintendents by this act * *
The funds coming into the hands of a principal as a result of the activities of the school are covered by the statutory conditions of the principal’s surety bond requiring “faithful performance of the duties of his office, including the proper administration of all activities funds and other funds of the district.” What, then, is meant by the statutory phrase “proper administration of all activities funds”?
It appears to this Court that one who is authorized to receive “activities funds” should make, as a minimum, at least some record of how much he receives, from whom, and for what purpose he receives it, to whom he paid the funds, and on what account. When a school principal buys books, class rings, class annuals, class pictures and other articles, and equipment for resale to the students — or on order from the students — the sums paid by the students should be applied to that particular account payable and should not be applied to other school activities. For example, money received from students for work *590 books should not be used to pay for gasoline to transport the football team. Hence, we cannot condone or approve the loose, irregular, inept- and slovenly manner in which the records were kept in the instant case by the defendant-appellee.
On the other hand, although the Mississippi Legislature has recognized that school superintendents and school principals do handle funds which come into their hands as a result of school activities, it has not established rules of procedure for the “proper administration of (such) activities funds”, nor has it authorized an administrative department to establish rules for the “proper administration of activities funds.” This Court, of course, has no authority to establish rules or procedure for administrative agencies, outside the activities of the judiciary. In the absence of legislation on the subject, we are bound by the rules of common law.
In the case of Golding v. Salter, 234 Miss. 567, 585, 586, 107 So.2d 348, 355 (1958) we had this to say:
“Since we have no statute defining the legal liability of members of the board of trustees in a case of this kind we must look to the rule of the common law and the decisions of our own Court for guidance. At common law a public officer acting judicially or quasi-judicially is not personally liable for an unlawful payment of public funds if he acted in good faith within the scope of the subject matter over which he has been given jurisdiction, and this rule has been applied to a disbursing officer, making apparently lawful payment, on express orders from his superior, notwithstanding his superior’s mistake, but a payment out of the public funds, although within the general field of the officer’s jurisdiction, may be so clearly and distinctly one which the officer could not lawfully make as to bar him from the justification that it was done in good faith.”
We pointed out in Barnett v. Lollar, 197 Miss. 574, 581, 19 So.2d 748, 750 (1944) that:
“What we have hereinbefore said in discussing the first of these questions deals with the general principles. We are not to be understood as holding, as respects the expenditure of public funds, that any payment whatever it is, will be without any personal liability on the part of the officer if only the purpose of the payment was somewhere within the general field of his jurisdiction. A payment may be within that general field and yet so clearly and distinctly one which the officer could not lawfully make, as to bar him from justification in taking the position that he did it in good faith and honest error. But this in a particular case we cannot safely determine until the full facts are developed, and they have not been here.”
In the present case there is no evidence in the record to show that the defendant was not authorized to purchase equipment, books, and other material for the school, or to use the “activities” fund for school purposes, and there is no evidence to show that any funds turned over to defendant were used for his personal benefit.
We are now of the opinion that the chancellor was correct in dismissing the bill under the facts in this case, and therefore the opinion of the trial court should be, and is, hereby affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, BRADY and PATTERSON, JJT., concur.

. Betterson v. Stewart, 238 S.C. 574, 121 S.E.2d 102 (1961); Betterson v. Stewart, 245 S.C. 296, 140 S.E.2d 482 (1965); Wood v. Honeyman, 178 Or. 484, 169 P.2d 131, 171 A.L.R. 587 (1946).

. International Order of Twelve, Knights & Daughters of Tabor v. Marshall, 195 So.2d 66 (Miss.1967); Golding v. Salter, 234 Miss. 567, 107 So.2d 348 (1958); Barnett v. Lollar, 197 Miss. 574, 19 So.2d 748 (1944); Murphy v. Panther Oil & Grease Mfg. Co., 181 Miss. 882, 179 So. 879 (1938); Lowe & Campbell Athletic Co. v. Nunn, 182 Okl. 304, 77 P.2d 738 (1938).