WALKER, Presiding Justice,
for the Court:
This is an appeal from the Chancery Court of Winston County, wherein the chancellor upheld a warranty deed executed by Monroe Allen Patterson and Rebecca J. Patterson (appellants) in favor of Merchants Truck Line, Inc. (appellees). The chancellor also found that the Patter-sons were indebted to Merchants Truck Line in the amount of $8,677.12. Judgment was entered accordingly.
From 1966 until 1980 Allen Patterson managed the Merchants Truck Line, Inc. (hereinafter MTL) terminal in Louisville, Mississippi. As manager he was responsible for collecting the freight fees from MTL’s Louisville customers. Some customers paid in advance while credit was extended to others. Mr. Patterson had authority to extend credit to those customers he thought creditworthy and was responsible for collecting the bills. When a bill was paid, Mr. Patterson would mark the bill “Paid” and send it to MTL’s New Albany office. He would also send a copy of the deposit slip showing where the check had been deposited, along with a daily cash report containing an itemization of those bills paid by cash.
Over the years MTL audited the Louisville terminal several times but never discovered anything other than minor discrepancies. On November 10, 1980 MTL conducted an audit of the Louisville terminal and discovered a shortage of approximately $10,000.00. The shortage was in bills which had been paid but which Mr. Patterson was listing as unpaid.
On November 13, 1980 Jimmy Roberson, secretary-treasurer of MTL and the one responsible for day-to-day operations of the company, contacted Mr. Patterson about the shortage and stated that the company was holding him responsible. Patterson responded that he would take care of the shortage.
The next day Patterson told his wife of the shortages. He stated that he did not know where the money had gone but had been aware of the shortages for some time and had been covering them up. Rebecca Patterson then phoned Jimmy Roberson and arranged to meet him in Pontotoc. Before she left, Mr. Patterson gave her a stack of bills, stating that they also had been paid but not reported as paid.
Mrs. Patterson took the additional bills to Pontotoc and gave them to Jimmy Roberson. At this meeting Roberson explained to Mrs. Patterson what the auditors found, and stated that the company was holding Mr. Patterson responsible. It was at this meeting that the parties first discussed the possibility of executing a deed to the Pattersons’ property as a means of covering the shortage. The meeting concluded and Mrs. Patterson returned to Louisville. That same afternoon Roberson phoned and told her that the bills she gave him totalled $79,000.00.
Thereafter, the Pattersons decided to surrender their Louisville property to cover the shortage. A deed was prepared covering four pieces of property that the Patter-sons owned. At the request of Mrs. Patterson, the deed was redrawn to exclude the house her daughter was living in. On December 16, 1980 Mr. and Mrs. Patterson signed the deed in their home.
Mr. and Mrs. Patterson have remained in their home since executing the deed, and MTL has charged them no rent.
On April 1, 1981 the Pattersons filed in the Chancery Court of Winston County a bill of complaint to set aside the warranty deed alleging, inter alia, fraud, duress, undue influence, and lack of consideration. MTL filed an answer denying the charges of the complaint and a cross-bill seeking to recover from Mr. Patterson the difference in the amount of the shortage and the value of the property in the deed.
A hearing was held on January 27, 1982 and Jimmy Roberson was called as an adverse witness by the complainants. He testified that MTL had no evidence that Mr. Patterson stole the money, but the company was holding Patterson responsible since he was the terminal manager. Roberson further testified that during the *290 November 14 meeting Mrs. Patterson suggested conveying their Louisville property to MTL to cover the shortages.
Mrs. Patterson was also called as a witness. She testified as follows: When her husband told her about the shortages he was very upset. He was afraid that he would be arrested and would go to jail. For several weeks he remained at home, refusing to leave. She didn’t want to sign the deed but did so because she was afraid her husband might commit suicide. The idea of using their property to cover the shortages was Mr. Roberson’s.
Mrs. Linda Simard, a neighbor and close friend of the Pattersons, testified that after all of this came up Mr. Patterson became irrational and threatened suicide.
Mr. Patterson then took the stand and testified as follows: Like most terminals, he kept his cash in an unlocked drawer accessible by all of his employees. Although he knew that the funds were missing for seven or eight years and had an idea who was taking them, he did not report the shortages to the company for fear of losing his job. Instead, he covered up the shortages by using payments on current bills to cover old bills. The shortages kept growing until they were discovered in 1980. Jimmy Roberson told him that MTL was notifying the bonding company, but it would be better if they settled it without involving the bonding company. He became very upset and feared that the bonding company would prosecute him. He thought that signing the deeds was the only way out. He and his son met with Jimmy Roberson and MTL’s attorney. They advised him to get independent legal advice before signing the deed. However, Roberson later told him that if he got a call from some attorney “haggling” over the amount, he would just turn the matter over to the bonding company.
MTL called Mr. Jimmy McMillan, a real estate appraiser. He testified that he had appraised the property conveyed by the Pattersons to MTL and believed it to be worth approximately $107,500.00.
After hearing all the evidence, the chancellor rendered an opinion and final decree upholding the deed. He found no evidence of fraud, duress, undue influence or lack of consideration. Furthermore, he ruled in favor of MTL on their cross-bill, finding that Mr. Patterson still owed MTL $8,677.12. This amount represents the difference in the shortage and the net value of the property conveyed (appraised value minus outstanding mortgages). It is from this judgment that the Pattersons appeal.
The appellants first complain that the chancellor was manifestly wrong in refusing to set aside the warranty deed conveyed to appellees, Merchants Truck Line, by appellants as being obtained by fraud, duress, undue influence, lack of consideration and inadequacy of consideration.
In support of this proposition the appellants cite the cases of Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1932) and Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926). These cases stand for the proposition that where a confidential or fiduciary relationship exists between parties to a deed, a presumption of invalidity arises. The grantee of the deed then has the burden of overcoming this presumption. The appellants argue that such a presumption arose in this case and the appellees did not present sufficient evidence to overcome the presumption.
In Green v. Frazier, 242 Miss. 315, 135 So.2d 399 (1961) this Court held that the burden of establishing a confidential relationship is on the party asserting it. The appellants in the present case have failed to meet this burden. The record is devoid of any evidence that the Pattersons placed a confidence in MTL. If any fiduciary duty exists at all, it was owed to MTL by Mr. Patterson, who was entrusted with the responsibility of collecting and depositing company funds. In the absence of a fiduciary or confidential duty by MTL, no presumption of invalidity arises.
The appellants also contend that the deeds should be set aside on the grounds of fraud and duress, arguing that it was obtained under threats of prosecution. The *291 appellants admit that MTL never stated that they would be prosecuted if the deeds were not signed. Rather, they claimed that such is to be inferred from Jimmy Roberson! s statement that be would turn the matter over to the bonding company if they were unable to work something out.
In 23 Am.Jur.2d Deeds § 200, it is stated: A threatened prosecution may be regarded as duress which will avoid a deed if the grantor is not, in fact and in law, amenable to prosecution. Deeds executed in payment of alleged embezzle-ments are generally held to be voidable, and the courts will set them aside upon application for such relief. Some authorities hold that a deed procured under a threat of prosecution of a near relative of the grantor is duress which will avoid the deed. Other courts hold, however, that the inducement of protecting the near relative does not amount to duress in the absence of a showing that the grantee had no reasonable ground to suppose that the person whose prosecution was threatened was guilty. Threat of a civil suit is not, of course, sufficient to constitute duress which will void a deed, nor are mere influence and persuasion.
This Court has held that threats of prosecution, under certain circumstances, constitute duress sufficient to invalidate a deed. Allen v. LeFlore County, 78 Miss. 671, 29 So. 161 (1900). However, in McGehee v. McGehee, 227 Miss. 170, 85 So.2d 799 (1956), it is stated:
“It is the well-established general rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights. It is never duress to threaten to do that which a party has a legal right to do, and the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement. Hence, a deed is not given under duress when made as counter-security to sureties upon their threat that otherwise they will compel, by legal process, the settlement of the matters for which they are sureties, and a mortgage given to secure a creditor on a running account is not invalid for duress if given after threats are made to shut off the account and sue for the amount due.” 17 Am.Jur., Duress and Undue Influence, par. 17, p. 892. See also 13 Words and Phrases, Permanent Edition, Duress.
227 Miss. 183, 85 So.2d 799.
In this case Jimmy Roberson’s threat to turn the matter over to the bonding company was a threat to do that which he had a legal right, if not an obligation, to do. Accordingly, this threat does not constitute the type of duress needed to set aside a deed.
The appellants also argue under this assignment of error that the deed should be set aside for want of consideration or for inadequate consideration.
In Campbell v. State Highway Commission, 212 Miss. 437, 54 So.2d 654 (1951), the general rule regarding consideration for a deed was discussed:
The contention that appellants’ land is being taken without consideration is not well founded as, in the absence of fraud, a voluntary conveyance of land can not be vacated at the instance of the grantor upon the ground that it was made without any consideration. In Longmire v. Mars et al., 124 Miss. 77, 86 So. 753, 754, the court held: “A total failure of consideration for a voluntary conveyance, in the absence of fraud, is no ground for a cancellation of the deed. This had been repeatedly decided by this court. In the case of Dixon v. Milling et al., 102 Miss. 449, 59 So. 804, 43 L.R.A.,N.S., 916, the opinion quotes from Day v. Davis, 64 Miss. 253, 8 So. 203, as follows: ‘A voluntary conveyance of land cannot be vacated, at the instance of the grantor thereof, upon the mere ground that it was made without any consideration; nor will such grantor be permitted to dispute the *292 existence of the consideration expressed in the deed.’ ”
212 Miss. 443, 54 So.2d 654.
In support of their contention the appellants cite Lampley v. Pertuit, 199 So.2d 452 (Miss.1967), wherein the Court stated that it would lay hold of slight circumstances of fraud or duress to rescind a conveyance given for grossly inadequate consideration. However, as we have already stated, absolutely no fraud or duress was proven in this case. Therefore, the Court will not question the adequacy of consideration given by MTL for the deed.
Finding no fraud, duress, undue influence, lack of consideration, or inadequate consideration, we conclude that the chancellor was correct in upholding the deed.
In the next assignment of error the appellants complain that it was error to award a money judgment to appellees with appellees having failed to meet the burden of proving by clear and convincing evidence that appellant, Monroe Allen Patterson, actually received the money. Relying upon International Order of Twelve, Knights and Daughters of Tabor v. Marshall, 195 So.2d 66 (Miss.1967), they contend that before an employee can. be held liable to an employer for misappropriation of funds, it must be proved by clear and convincing evidence that the employee actually received the funds. In Marshall, supra, the defendant was a bookkeeper for Tabor, an organization which operated a hospital. Tabor received funds by mail, personal delivery, and in some cases, delivery to individual employees. The money was then placed in a safe, the combination of which was known by the defendant and another bookkeeper. Affirming the chancellor’s decision that the defendant was not liable for the missing funds, the Court stated:
The problem in the present case is with the proof concerning whether defendant took the money. There is no presumption that will aid in proving that defendant actually received the money. That fact must be proved by clear and convincing evidence. We are unwilling to hold that a presumption should bolster unsatisfactory evidence as to whether defendant misappropriated her employer’s funds. In other words, the evidence fell short of establishing clearly and convincingly that defendant received the funds, and the case against her is not aided by any presumption. If the evidence had been sufficient to trace the money into the position of defendant, the burden of accounting for the funds would then be on defendant.
195 So.2d 69. (Emphasis added).
In this case Mr. Patterson was responsible for the company funds. Although denying any wrongdoing, Patterson admitted that he received the money. Moreover, he failed to explain its disappearance and even admitted covering up the disappearance for many years. Under these facts Patterson would be liable to MTL for the missing funds. See 53 Am. Jur.2d Master and Servant § 108. Consequently, the chancellor was correct in ruling in favor of the appellees on the cross-bill.
For the foregoing reasons, the judgment of the chancery court should be affirmed.
AFFIRMED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and BOWLING, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
HAWKINS, J., not participating.