LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Glen Angus and Michael Mayer are real-estate developers who were involved together in several projects on the Mississippi Gulf Coast. The terms of their collaborations are disputed. Mayer brought suit against Angus in the Harrison County Chancery Court, contending, among other things, that Angus wrongfully excluded him from one transaction and forced him to be included in another. The chancery court granted summary judgment in favor of Angus on all of Mayer’s claims.
¶ 2. Mayer now appeals, contending that genuine issues of material fact exist to support his claims: (1) fraud; (2) reformation of the Ocean Club at Biloxi (OCAB) operating agreement due to fraud and duress; (3) breach of contract; (4) specific performance; (5) unjust enrichment; (6) interference with contract/business relationship; and (7) breach of fiduciary duty. We have reorganized the issues for clarity and efficiency.
FACTS
¶ 3. Both Mayer and Angus have extensive experience in the real-estate business. Mayer, a California resident, describes himself as a “sponsor” who identifies real-estate projects around the country, and then he finds investors and raises capital for acquisition and development. Angus, a Mississippi resident, is a developer with a more regional focus. Their business relationship began in 2002 when Angus approached Mayer about a possible joint venture in Alabama, which did not “pan out.” Mayer subsequently toured several potential projects Angus had identified on the Gulf Coast. There was a general understanding between the two that they would share in the “sponsor’s interest” on these projects if they participated in them together. Mayer declined most of these proposals. One condominium development acquisition, called the “Gulf Towers,” was completed by Angus. According to Mayer, he did some work on that project, but Angus wrongfully “did the deal” without him. Mayer claims an interest in the Gulf Towers project.
¶ 4. The bulk of Mayer’s claims relate to a second condominium project, the OCAB. The OCAB deal was the purchase for redevelopment of a site that had most recently been part of the President Casino in Biloxi. It was not disputed that Mayer had discovered the site without Angus’s involvement, and he secured the contract to purchase the property.
¶ 5. According to Mayer, he offered Angus a share of the OCAB project if Angus *448 could secure some of the financing; instead, Angus contends that his role was to use his local presence and connections to carry the project forward on a day-to-day basis. Angus denied that he was required to find an investor to get his share of the project.
¶ 6. Ultimately, Mayer found an investor, Drake Leddy, to finance most of the OCAB acquisition. According to Mayer, Angus had represented that he had an investor, David Silver, who would supply $750,000 in financing for the project. Approximately four days before the closing, however, Angus told Mayer that Silver had backed out. Mayer now contends that either Silver never existed or that he never agreed to finance the OCAB acquisition. After Angus did not come through with the financing, Mayer had to go to his own investor, Leddy, for the remaining money; but Leddy would not agree to finance the project unless he received a larger share. Mayer offered Angus’s interest to Leddy, and Angus responded by threatening to sue. Leddy stated that he wanted no part of a lawsuit and would back out entirely unless Mayer resolved his differences with Angus. According to Mayer, the threat forced him to give Angus one-half of his own interest in the project, an agreement Mayer now contends is voidable because of duress.
¶ 7. According to Angus, Mayer was supposed to secure the financing for the OCAB project himself but was having difficulty. Mayer had driven away several potential investors with his personality and hardline negotiating tactics. Angus had worked to find investors so the project could go forward, but his share did not depend on him succeeding. Silver had tentatively agreed to finance some of the project, but during the time it took to get Leddy onboard, Silver changed his mind.
¶ 8. Mayer, Angus, and Leddy executed an operating agreement for the OCAB project, creating a limited liability company. The agreement gave Leddy a 67% interest, with Mayer and Angus each holding 16.5%. They also executed a letter agreement that provided for an adjustment of the stakes if an additional investor was found to replace the $750,000 commitment from Leddy. The letter agreement also gave Mayer an option to purchase Angus’s interest for $170,000 if an additional investor was not found. Ultimately, Mayer attempted to exercise this option, but he tendered only $120,000, offsetting his offer by $50,000 he contended Angus owed him from a deposit on the project. Angus refused.
STANDARD OF REVIEW
¶ 9. In reviewing a lower court’s grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., 716 So.2d 548, 547 (¶ 13) (Miss.1998). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This Court will consider all of the evidence before the lower court in the light most favorable to the non-moving party. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
DISCUSSION
I. FRAUD (OCAB)
¶ 10. Mayer’s first count relates to Angus’s representations that Angus had *449 secured an investor, Silver, who would finance $750,000 of the OCAB project. Mayer contends these representations were false and were fraudulently used to put Mayer in a position where he had no choice but to give Angus a share in the project.
¶ 11. To succeed, a fraud claim requires Mayer to prove by clear-and-eon-vincing evidence the following:
(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
O.W.O. Inv., Inc. v. Stone Inv. Co., 32 So.3d 439, 446 (1120) (Miss.2010) (citation omitted).
¶ 12. We need not go beyond the second element to affirm the chancellor’s grant of summary judgment on this issue. Mayer offered no direct evidence that Angus’s statements about Silver were false. Mayer instead relies on an “inference” from the fact that Angus could not provide contact information for Silver at his depositions in this litigation, years after the events at issue. Mayer also contends that he searched for Silver on the Florida Secretary of State’s web site and could not confirm Silver’s existence; but, again, this was years after the fact. A party opposing summary judgment is entitled to all reasonable inferences from the evidence. Rhaly v. Waste Mgmt. of Miss., Inc., 43 So.3d 509, 516 (¶22) (Miss.Ct.App.2010). However, the evidence must “remove the case from the realm of conjecture and place it within the field of legitimate inference.” Kussman v. V & G Welding Supply, Inc., 585 So.2d 700, 703 (Miss.1991). This is particularly true when the inference is offered to support a claim of fraud, which must be proven by clear-and-convincing evidence. We find the chancellor properly granted summary judgment on this issue.
II. REFORMATION/DURESS
¶ 13. In this issue, Mayer contends that the OCAB operating agreement should be reformed because of Angus’s fraud and because Mayer executed the agreement under duress. We have already addressed Mayer’s fraud allegation and found it unsupported by clear-and-convincing evidence. Consequently, we limit our analysis to the duress claim.
¶ 14. Mayer contends that Angus’s threat of a lawsuit caused Mayer’s investor, Leddy, to threaten to withdraw unless Angus’s claims were resolved. If Leddy withdrew, Mayer would not be able to close on the property and would lose approximately $200,000 in deposits. Mayer alleges that Angus’s threat forced him to execute an operating agreement and letter agreement that assigned Angus a 16.5% share in the OCAB project. Mayer seeks reformation of this agreement because it was executed under duress.
¶ 15. “[T]o invalidate a contract on grounds of economic duress, the complaining party must establish: (1) that the dominant party threatened to do something which he had no legal right to do; and (2) that the wrongful threat overrode the volition of the victim and caused him to enter an agreement against his free will.” Bailey v. Estate of Kemp, 955 So.2d 777, 783 (¶ 23) (Miss.2007) (quoting Kelso v. McGowan, 604 So.2d 726, 732 (Miss.1992)). Regarding duress, the Mississippi Supreme Court has held:
It is the well-established general rule that it is not duress to institute or threaten to institute civil suits, or take *450 proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights. It is never duress to threaten to do that which a party has a legal right to do, and the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement.
Patterson v. Merchs. Truck Line, Inc., 448 So.2d 288, 291 (Miss.1984) (internal quotations and citations omitted).
¶ 16. Mayer has made no effort to show Angus’s threat to sue was made in bad faith. In fact, Mayer readily admitted in his deposition that Angus was entitled to some remuneration for his work on the OCAB project, if not the percentage he actually received. This issue is without merit.
III. BREACH OF CONTRACT
¶ 17. Mayer contends that Angus breached two promises made prior to the execution of the written agreements. The first concerned deposit investors. To secure the OCAB purchase contract, Mayer had borrowed $100,000 from two investors. Mayer alleges Angus had agreed to repay one-half of this deposit or $50,000. Angus does not deny that he had agreed to cover half of the deposit if the deal fell through, but he contends the deposits should have been rolled into the closing. Mayer testified that he repaid the deposit investors personally. The second agreement Mayer alleges Angus breached was a promise to find an investor to cover one-half of the purchase price of the OCAB property.
¶ 18. “In reviewing negotiations culminating in a contract, it is assumed that previous negotiations are merged in the final document and that it expresses the intention of the parties.” Hoerner v. First Nat’l Bank of Jackson, 254 So.2d 754, 759 (Miss.1972). “One of the fundamental principles of contract law is that parol evidence will not be received to vary or alter the terms of a written agreement that is intended to express the entire agreement of the parties on the subject matter at hand.” Benchmark Health Care Ctr., Inc. v. Cain, 912 So.2d 175, 182 (¶ 18) (Miss.Ct.App.2005) (quoting Housing Auth. City of Laurel v. Gatlin, 738 So.2d 249, 251 (¶ 10) (Miss.Ct.App.1998)). In other words, “a written contract cannot be varied by prior oral agreements.” Stephens v. Equitable Life Assur. Soc’y of the United States, 850 So.2d 78, 82 (¶ 14) (Miss.2003) (citation omitted).
¶ 19. Neither of the written agreements ' executed by the parties required Angus to pay Mayer $50,000 or secure one-half of the financing for the project. These issues are without merit.
IV. BREACH OF CONTRACT/SPECIFIC PERFORMANCE
¶ 20. These issues relate to Mayer’s option to purchase Angus’s interest in the OCAB project if additional financing was not secured after the closing. Mayer contends that Angus breached the agreement to sell Mayer his share, and Mayer seeks specific performance of the option.
¶ 21. The letter agreement required that Mayer pay $170,000 within a certain time period to purchase Angus’s interest. Mayer admits that he only tendered $120,000, contending he was entitled to an offset by the $50,000 Angus owed him for repaying the deposit investors.
¶ 22. As Mayer’s tender did not comply with the terms of the agreement, we find no error in the chancellor’s grant of summary judgment on these issues.
*451 V. UNJUST ENRICHMENT
¶ 23. Mayer contends that Angus contributed nothing to the OCAB project and, thus, was unjustly enriched by the share he received through the letter agreement. “To collect under an unjust enrichment or quasi-contract theory, the claimant must show there is no legal contract, but the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.” Ellis v. Anderson Tully Co., 727 So.2d 716, 719 (¶ 25) (Miss.1998) (citation and internal quotations omitted).
¶ 24. We have found the OCAB operating agreement and letter agreement to be valid and binding contracts, so a cause of action for unjust enrichment does not exist. This issue is without merit.
VI. TORTIOUS INTERFERENCE WITH A CONTRACT OR BUSINESS RELATIONSHIP
¶ 25. In these issues, Mayer contends that Angus’s act of threatening a lawsuit after Mayer attempted to cut him out of the OCAB project amounted to a tortious interference with Mayer’s contract or business relationship with Leddy.
¶ 26. “A party to a contract cannot be liable for tortious interference with the same contract.” Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A., 910 So.2d 1093, 1098 n. 3 (Miss.2005).
¶ 27. Tortious interference with business relations is different from interference with contract. Cenac v. Murry, 609 So.2d 1257, 1268 (Miss.1992). It has been characterized as “malicious injury to business” or where one “maliciously and wantonly injure(s) a competitor.” Id. at 1269-70. In Cenac, the supreme court noted that the malicious intent to interfere and injure the business of another is a critical element of the tort. Id. at 1271. The supreme court also observed that threats of groundless lawsuits, which are made in bad faith, can constitute tortious interference with business relations. Id. at 1270-71.
¶ 28. Mayer’s claim fails because, again, he has failed to show that Angus’s threat of a lawsuit was groundless or made in bad faith. Nor has Mayer shown that the threat was made with a malicious intent to injure him, especially considering that Angus had an apparently legitimate purpose of protecting his own interest in the project. Tortious interference with business relations requires wrongful conduct “without excuse or justification.” 86 C.J.S. Torts § 41 (2006).
¶ 29. These issues are without merit.
VII.JOINT VENTURE/BREACH OF FIDUCIARY DUTY AND FRAUD (GULF TOWERS)
¶ 30. Mayer’s final issues relate to the Gulf Towers project. Mayer contends Angus owed him a fiduciary duty because the two were engaged in a de facto joint venture to acquire the Gulf Towers property. Mayer alleges Angus breached that duty when he wrongfully acquired the property behind Mayer’s back. Mayer also contends that Angus fraudulently concealed the acquisition of the Gulf Towers from him.[1] According to Angus, Mayer had declined his offer to work together to acquire the property. Both of Mayer’s claims hinge on the exis *452 tence of a joint venture to acquire the Gulf Towers.
¶ 31. The supreme court has described the law of joint ventures as follows:
Under Mississippi law, a joint venture is an enterprise engaged in by [two or more] persons jointly to carry out a single business enterprise for profit, for which purpose the persons involved combine their property, money, efforts, skill[,] and knowledge. A partnership and joint venture are virtually the same, except that a joint venture is thought to have more limited and circumscribed boundaries. The two may be created in the same ways. Each may exist as an oral or written, express or implied agreement among its members. Where, as here, the agreement is oral, it is left to the court to resolve disputes based on the oral and documentary evidence presented, applying the preponderance of the evidence standard.
Davis v. Noblitt & Capers Elec. Co., Inc., 594 So.2d 610, 613 (Miss.1992) (citations and internal quotations omitted). As with an ordinary partnership, the critical elements of the existence of a joint venture are (1) intent, (2) control, and (3) profit sharing. Braddock Law Firm, PLLC v. Becnel, 949 So.2d 38, 50 (¶ 46) (Miss.Ct.App.2006).
¶ 32. Mayer’s evidence is sparse, but he contends that it is sufficient to create an inference of a joint venture between the two. He notes that Angus readily admitted to what was essentially a joint venture agreement on the projects they did together. Mayer pairs this with a document he offered into evidence styled a “contract report,” which is essentially a log of his dealings with Angus. Mayer contends the log is proof that he and Angus worked together on the Gulf Towers. Mayer does not point to any specific entries, but our own review of the document reveals only a handful of entries regarding the Gulf Towers project. There are two entries in November 2002 noting phone calls related to the Gulf Towers. The first entry stated that Angus would send Mayer the “due diligence,” and the second entry, about ten days later, notes several findings about a potential development. There is only one other entry, dated October 30, 2003, which states that Gulf Towers had been appraised for $4,900,000. On the other hand, the log contains hundreds of entries regarding the OCAB project, and the log also contains numerous notes regarding other potential or proposed acquisitions in which Mayer admits he declined to participate.
¶ 33. We agree with the chancellor that this log is not sufficient evidence to create a genuine issue of material fact of a joint venture to acquire the Gulf Towers. Consequently, we affirm the chancellor’s grant of summary judgment on this issue.
¶ 34. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ, CONCUR.

. In his deposition, Mayer’s principal contention was that Angus had closed with an investor he had met as a result of working with Mayer on a failed project. Mayer contended that entitled him to a share of the Gulf Towers, but he has not raised that as an issue on appeal, so we do not address the claim.