605 So.2d 777 (1992)
C. Allen SPRAGINS, Jr.
v.
SUNBURST BANK, formerly Grenada Bank d/b/a First Greenville Bank.
No. 89-CA-1217.
Supreme Court of Mississippi.
August 5, 1992.
Rehearing Denied October 8, 1992.
*778 Charles M. Merkel, Jr., John H. Cocke, Merkel & Cocke, Clarksdale, for appellant.
Jack F. Dunbar, Guy T. Gillespie III, Janet G. Arnold, Holcomb Dunbar Connell Chaffin & Willard, Oxford, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the court:

I.
C. Allen Spragins filed this suit against Sunburst Bank alleging damages due to misrepresentations. Sunburst Bank's Motion For Summary Judgment was granted. Spragins appeals the summary judgment claiming that: (1) the lower court erred in granting a summary judgment in favor of Sunburst Bank on the claim of negligent misrepresentation; and (2) the lower court erred in granting a summary judgment in favor of Sunburst Bank on the claim of intentional misrepresentation. Finding no error in the summary judgment granted below, we affirm.

II.
C. Allen Spragins, Jr. managed a family farm known as Refuge Plantation in Washington County for many years. Spragins did not own stock in Refuge Plantation and had no ownership interest in the property. In the summer of 1983, a deed of trust was executed in favor of Sunburst Bank due to overdue interest on a delinquent principal note on the farm. The note was secured by a towboat known as the Shenandoah, a boat in which Spragins had an ownership interest. Stock in Refuge Plantation was pledged as additional security. Spragins was a guarantor on the note. In the latter part of 1983, the towboat burned, and the insurer denied coverage. The boat was also subject to a substantial amount of debt with Sunburst.
In December, 1984, the Refuge Plantation debt was restructured by Refuge Plantation, Inc.'s execution of another note and deed of trust on the Refuge farmland. Meanwhile, a lawsuit was pending in federal court due to the denied coverage of the boat loss. Sunburst continued to provide financing and crop production loans to Refuge Plantation. In 1985 and 1986, the crop production loans to Refuge Plantation went unpaid and interest on the loans continued to accrue. Additionally, farmland values in the area were declining.
Spragins received judgment against the insurer of the Shenandoah towboat in federal *779 district court for $1,000,000.00 and $250,000.00 in interest. Debt value on the boat was in excess of $1,700,000.00. Additionally, the judgment was appealed to the Fifth Circuit Court of Appeals, delaying any collection.
In early 1986, Sunburst Bank requested an updated appraisal from Refuge Plantation. Spragins retained the services of MAI appraisers. They appraised the 1,975 acres of Refuge Plantation at $2,630,000.00.
Spragins and Milton Taylor, president of Sunburst Bank in Greenville, agreed that Refuge Plantation should be placed on the market. Spragins recognized that an open market sale would yield more proceeds than a forced foreclosure sale. In June, 1986, a successful investment broker from Memphis, Duncan Williams, viewed the property and visited with Spragins. Williams decided that Spragins was asking too much for the land, and no agreement was reached for a sale. Philip Terney, one of Spragins' attorneys, testified that Spragins was not really interested in selling Refuge Plantation at any price.
Spragins filed personal bankruptcy in August, 1986. He ceased being a guarantor on the Refuge Plantation note. The crop production loans for 1985 and 1986 had remained unpaid. As of October, 1986, the total amount of principal debt and accrued interest owed to Sunburst and secured by the Refuge Plantation deed of trust had reached approximately $2,800,000.00. Additionally, the notes had been placed on nonaccrual since April, 1986, and several hundred thousand dollars in additional nonaccrued interest was overdue as well. The parties agreed that foreclosure had become necessary.
Foreclosure proceedings as to the Refuge Plantation were instituted in January, 1987. The foreclosure sale date was set for February 23, 1987.
Frank Thackston, an attorney for Spragins, suggested to Sunburst Bank that Spragins be given a right of first refusal. Sunburst Bank negotiated with Spragins' attorneys two agreements regarding post-sale operation and disposition of Refuge Plantation if Sunburst Bank was the high bidder at the foreclosure sale. One agreement was a Prospective Right of First Refusal which stated in pertinent part that the agreement was applicable "in the event of Bank's being the successful bidder at the foreclosure." The other agreement was a contingent lease between Sunburst Bank and Spragins Farms. The lease provided enforcement "subject to Lessor's [Sunburst Bank] acquiring title to Property at the foreclosure on February 23, 1987" and stated that the lease was void "[s]hould Lessor for any reason not acquire title to Property".
Refuge Plantation was viewed prior to the foreclosure sale by a Mr. and Mrs. Huber. Additionally, Duncan Williams again made inquiries about the plantation and attempted to contact Spragins on several occasions. Spragins and Frank Thackston, an attorney for Spragins, talked to the Sunburst Bank trustee, Claude Stuart, about the possibility of someone other than Sunburst Bank buying the plantation at the foreclosure sale. Stuart and Thackston testified that Stuart informed Spragins that other people show up at foreclosure sales but that they rarely bid. Stuart and Thackston testified that Stuart added, "but you never know."
Duncan Williams made arrangements to borrow over two million dollars from Sunburst Bank if he needed the money.
Two of Spragins' attorneys, Terney and C.W. Walker, testified that they explained to Spragins that someone else could be the successful bidder. Spragins admitted that he was told someone else could be the successful bidder.
At the sale, Duncan Williams outbid Sunburst Bank (his bid exceeded Sunburst Bank's by only $3,000). Spragins subsequently filed this action against Sunburst Bank, claiming that Sunburst Bank made the following misrepresentations to him:
(1) that Sunburst Bank did not know of any other serious bidders, and
(2) that Sunburst Bank thought it would be the successful bidder at the foreclosure sale.

*780 III.
The lower court did not err in granting summary judgment in favor of Sunburst Bank on the claims of negligent and fraudulent misrepresentation.
Negligent misrepresentation has been explained by this Court on few occasions. The basis for damages resulting from negligent misrepresentation is the lack of care. Bank of Shaw v. Posey, 573 So.2d 1355, 1360 (Miss. 1990) quoting First Money, Inc. v. Frisby, 369 So.2d 746, 750 (Miss. 1979). [Frisby was the first instance in which this Court implicitly sanctioned the action of negligent misrepresentation.]
In order to recover in a cause of action based on negligent misrepresentation, Spragins must prove by a preponderance of the evidence:
(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons; (4) that they reasonably relied upon the bank officer's misrepresentation or omission; (5) that they suffered damages as a direct and proximate result of such reasonable reliance.
Bank of Shaw, 573 So.2d at 1360; Shogyo International Corp. v. First National Bank of Clarksdale, 475 So.2d 425, 427 (Miss. 1985); Berkline v. Bank of Mississippi, 453 So.2d 699, 702 (Miss. 1984).
The first element of negligent misrepresentation, misrepresentation of a fact, must concern a fact rather than an opinion. Bank of Shaw, 573 So.2d at 1360; see also Shogyo, 475 So.2d at 428. Clearly, Sunburst Bank was simply expressing its opinion that there would not be any other serious bidders.
Also, in Bank of Shaw, this Court adopted the law of other jurisdictions wherein the first element of negligent misrepresentation, misrepresentation of a fact, must concern a past or present fact as contrasted with a promise of future conduct. Bank of Shaw, 573 So.2d at 1360-1361, citing Margrove Incorporated v. Lincoln First Bank of Rochester, 54 A.D.2d 1105, 388 N.Y.S.2d 958 (1976) and citing Murray v. Xerox Corporation, 811 F.2d 118 (2nd Cir.1987).
Since Spragins has predicated his claim of negligent misrepresentation on Sunburst Bank's alleged promise of future conduct, that Sunburst Bank would buy Refuge Plantation at the upcoming foreclosure sale, he has failed to prove an essential element of his claim. Summary judgment was appropriate in the case at bar. The parties are not in dispute about the facts. Judge Evans simply applied the law of negligent misrepresentation to the case at bar and correctly found that Spragins' claim was insufficient.

IV.
The lower court did not err in granting summary judgment in favor of Sunburst Bank on the claim of intentional misrepresentation.
In Frisby, this Court recognized two separate causes of action, fraudulent (or intentional) misrepresentation and negligent misrepresentation. Frisby, 369 So.2d at 750.
In order to establish fraudulent misrepresentation, Spragins must prove, by clear and convincing evidence, the following elements:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.
Bank of Shaw, 573 So.2d at 1362; Ezell v. Robbins, 533 So.2d 457, 461 (Miss. 1988); Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984); Franklin v. Lovitt Equipment Company, Inc., 420 So.2d 1370, 1373 (Miss. 1982). If Spragins failed to put on sufficient evidence to create an issue of fact for the jury as to any of the above *781 elements, then the issue of fraudulent misrepresentation was correctly excluded from the jury. See Bank of Shaw, 573 So.2d at 1362.
Just like negligent misrepresentation, a claim of fraudulent representation cannot be predicated on a promise relating to future actions. Fraudulent misrepresentations must be related to past or presently existing facts. Bank of Shaw, 573 So.2d at 1360; McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1037 (Miss. 1990); Credit Industrial Co. v. Adams County Lumber and Supply Co., 215 Miss. 282, 290, 60 So.2d 790, 794 (1952). Fraud cannot be predicated upon statements which are promissory in nature. House v. Holloway, 258 So.2d 251, 253 (Miss. 1972); Salitan v. Horn, 212 Miss. 794, 55 So.2d 444, 446 (1951).
The evidence in the record sub judice does not support a claim of fraudulent misrepresentation by clear and convincing evidence. Sunburst Bank allegedly made promises to buy Refuge Plantation. This is a promise of future conduct and clearly excluded from recovery under an intentional misrepresentation claim. While Sunburst Bank's alleged representation that it did not know of any other serious bidders may concern a present fact, this representation was supported only by Spragins' claims. Spragins was asked if anyone connected with Sunburst Bank had ever led him to believe that no one else was interested in bidding on Refuge Plantation, and Spragins answered, "Not that I recall" and "I don't think so." Further, Spragins was warned by Sunburst officials, its lawyers and by his own lawyers that others may bid and that Sunburst may not be the successful bidder. This he understood and indeed he acknowledged in writing in the two instruments executed by him in his dealings with Sunburst.
Summary judgment was appropriate in the case at bar. Judge Evans applied the law of intentional misrepresentation to the undisputed facts and found Spragins' claim to be lacking.

V.
The summary judgment entered below is affirmed. There is no dispute of material facts, and the application of Mississippi law by Judge Evans was correct. Spragins' claims, taken as true, involve allegations that Sunburst Bank expressed mere opinions about future events.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
PRATHER and ROBERTSON, JJ., not participating.