# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00760-SCT

*RAPHAEL Q. SKRMETTA*

*v.*

*BAYVIEW YACHT CLUB, INC., BOOMTOWN, INC., AND MISSISSIPPI - I GAMING, L.P.*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/31/2000 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM C. BRABEC |
| | JAMES W. CRAIG |
| | JAMES W. SHELSON |
| ATTORNEYS FOR APPELLEES: | PHILIP A. FRANCO |
| | JAMES G. PERDIGAO |
| | CHARLES P. ADAMS, JR. |
| | GERALD HENRY BLESSEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/07/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/28/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. On August 14, 1998, Raphael Q. Skrmetta (Ray) filed a lawsuit against Mississippi-I Gaming, L.P., Bayview Yacht Club, Inc. and Boomtown, Inc. (Boomtown). Ray claimed he was defrauded into accepting a 15% limited partnership interest in Boomtown in exchange for the first two years of base rent due under his lease of land to Boomtown. His claims were based on negligent misrepresentation and fraudulent representation or intentional misrepresentation. The rent for two years was stipulated to be in the amount of $4 million. Ray argues that the reason he agreed to take a 15% partnership interest in exchange for the rent was because Boomtown made oral representations that it would build a hotel next to the casino.

¶2. Boomtown initially responded to Ray's complaint by moving to stay proceedings and to mandate arbitration. The Circuit Court of Harrison County (Second District) , Honorable Kostas N. Vlahos, presiding, denied Boomtown's motion to stay and to mandate arbitration. The circuit court also denied Boomtown's motion for summary judgment on the counts of fraud and negligent misrepresentation. The

circuit court held on denying Boomtown's motion for summary judgment:

> A material issue of fact exists as to when, and by whom, the decision to accept the equity interest in place of two years' rent was made. Under *Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co.*, 554 So. 2d 884 (Miss. 1989), a verbal, contractual promise with the present, undisclosed intention of nonperformance ... may give rise to any action for damages. Plaintiff alleges the defendant made a promise to plaintiff in order to secure forgiveness of rent in exchange for an equity interest and exhibits supporting this allegation exist in the court file.

¶3. On March 28, 2000, trial began and at the close of three days of testimony from Ray's witnesses and one Boomtown witness, the circuit court granted Boomtown's motion for directed verdict and dismissed the case. Final judgment was entered on April 13, 2000. Ray now raises the following three issues on appeal before this Court.

**I. Whether the circuit court erred in directing a verdict for Boomtown at the close of Ray's case-in-chief.**

**II. Whether the circuit court erred in excluding an audiotape of Boomtown's misrepresentations.**

**III. Whether the circuit court erred in failing to disqualify one of Boomtown's trial attorneys, who had also served as counsel in the re-zoning application of the property at issue in this case.**

## FACTS

¶4. Ray Skrmetta is an eighty-year-old gentleman who owns certain property on Biloxi's back bay. On October 19,1993, Ray entered into a ground lease wherein he leased his property to Boomtown. Eric Skrmetta, Ray's son, started looking into the development of the gaming industry in 1992 after it was authorized in Louisiana and Mississippi. Eric, an attorney, acted for Ray's interest and his own interest in holding discussions with several different gaming operators about developing a casino on Ray's property. In Eric's discussions with Boomtown he negotiated with Robert List. Eric wanted to be a partner in the Casino, but List informed Eric that he could not participate as a partner unless he had money to contribute.

¶5. In order to become a partner in the casino, Eric suggested to Ray that he relieve Boomtown of two years rent in exchange for Boomtown granting Eric a 15% partnership interest. From the record, it appears that Boomtown and Eric were interested in eventually building a hotel next to the casino. However, none of the written documents signed by Eric or Ray evidence any intention on the part of Boomtown to build a hotel.

¶6. The first document executed between Boomtown and Ray was a letter of intent, dated March 26, 1993. The letter of intent stated that Boomtown would transfer to Ray Skrmetta or his designee a 15% partnership interest in lieu of paying the base rent to Ray for the first two years of the lease. The letter of intent makes no reference to the future construction of a hotel. On April 9, 1993 Eric signed an agreement to lease property as attorney for his father. The lease stated that the agreement and the exhibits constituted the entire agreement between the parties. There were no representations contained in the original agreement to lease property that a hotel would be built. On September 12, 1993, Eric executed an amended agreement to lease property. Eric understood that there was nothing in the amended agreement that

evidenced an obligation on the part of Boomtown to build a hotel. A ground lease and two amendments to the ground lease were also signed by Ray. These documents contain no provisions or representations that would indicate Boomtown intended to build a hotel in the future. The lease of Ray's property was for a term of 99 years, which proved to be a multi-million dollar deal for Ray.

¶7. The partnership admission agreement was executed by Ray and Eric on July 7, 1995. This document formally admitted Eric as a 15% limited partner in Boomtown. The partnership admission agreement contained no representation that a hotel would be built. As the record reflects, Eric understood that the partnership agreement constituted the entire agreement between the parties. Paragraph 1(b) of the agreement provided that the forgone rent was deemed to have been paid and satisfied in full, and the agreement provided that Ray released Boomtown from any and all claims with respect to the forgone rent.

¶8. In August of 1997, Boomtown requested to buy out Eric's partnership interest in Boomtown. Eric received $400,000 for his partnership interest in Boomtown in settlement of an arbitration proceeding concerning the buy out. At the trial of the case before this Court, Eric admitted that it was possible that fraudulent misrepresentation was one of the issues raised by Eric's attorney at the arbitration. This issue, Boomtown contends was the same allegation made by Ray in his lawsuit against Boomtown.

¶9. Tim Parrott was the CEO and Chairman of the Board of Boomtown Inc. during the time period at issue. In a letter to the Mississippi Gaming Commission, dated May 26, 1994, Boomtown stated that it had entered into an agreement to sell certain assets of the casino for $10 million. Boomtown stated in that letter that with the new funding it would proceed with the construction of a 150-room hotel which would carry the Days Inn name. Also, Parrott testified at trial that Boomtown did intend and plan to build a hotel when he made statements to the Mississippi Gaming Commission in June of 1994.

¶10. According to Parrott, when Boomtown casino opened in July of 1994, the slot win was less than half of what had been projected, several competing casinos opened, and at least three other casinos in Biloxi failed. Parrott testified that Treasure Bay, Biloxi Belle, Palace Casino, Gold Shore, and President Casino all went into bankruptcy. Parrott testified that, during that time, the Biloxi Belle owned the Buena Vista Hotel and the President Casino was associated with the Broadwater hotel. Some of these casinos, according to Parrott, have come out of bankruptcy. Boomtown casino initially was projected to cost around $20 million and ended up costing about $55 million to stay competitive with the other casinos. According to Parrott, Boomtown worked on hotel plans, but Boomtown's expectations could not feasibly become reality.

¶11. On appeal before this Court, Ray now contends that the circuit court erred in directing a verdict in favor of Boomtown.

### DISCUSSION

### I. WHETHER THE CIRCUIT COURT ERRED IN DIRECTING A VERDICT FOR BOOMTOWN AT THE CLOSE OF RAY'S CASE-IN-CHIEF.

¶12. In reviewing a trial court's decision to grant a directed verdict, we review such decisions under the de novo standard of review. *Morgan v. Greenwaldt*, 786 So.2d 1037, 1041 (Miss. 2001). On a motion for a directed verdict, if a court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. *Id.* at 1042. A directed verdict is only proper if the plaintiff's evidence is so lacking that reasonable jurors would be

unable to reach a verdict in favor of that party. *Anderson v. B.H. Acquisition, Inc.*, 771 So.2d 914, 917 (Miss. 2000).

*Negligent Misrepresentation*

¶13. In order to establish a prima facie case of negligent misrepresentation, a plaintiff is required to show:

(1) a misrepresentation or omission of a fact;(2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

*Spragins v. Sunburst Bank*, 605 So.2d 777, 780 (Miss. 1992). Furthermore, the first element of misrepresentation must concern a past or present fact as contrasted with a promise of future conduct. *Id.* The trial court concluded that:

[T]he burden of proof required on negligent misrepresentation, that burden of proof being by a preponderance of the evidence on the very first issue which is that the representation must be as to a stated facts[sic], past or present.

It's the [c]ourt's determination that that burden has not been met and, therefore, the negligent misrepresentation must fail in this case, and that will be excluded from the jury.

¶14. Ray argues that there was sufficient evidence to present a jury question. He argues that testimony provided by Eric showed that Boomtown touted the hotel as a way to substantially increase revenues. Ray relies on the testimony of Parrott, who stated in a hearing that Boomtown escrowed $10 million for the purpose of building a hotel. Ray submits that at the June 30, 1994, meeting with the Mississippi Gaming Commission, Boomtown stated that the money for the hotel "was in the bank." Ray argues that this statement and other present misrepresentations induced him to sign the partnership admission agreement. The crux of Ray's argument is that he believes Boomtown knew that it would not be able to build a hotel well before Ray agreed to sign the partnership agreement on July 7, 1994, but nevertheless touted that Boomtown was ready to begin building the hotel. Therefore, Ray contends that Boomtown made misrepresentations of present fact.

¶15. Ray contends that the video deposition testimony of Lee Sumrall, the former senior vice president of finance and CFO of Boomtown, Inc., shows that the representations made by Boomtown were in fact false. Sumrall stated that Boomtown knew that there was not enough money to build a hotel as early as January or February of 1994. On the other hand, Boomtown points out that Sumrall indicated that it was the intent of Boomtown to build a hotel up until September of 1995, when it refunded $2.5 million in escrow funds. At that point, Sumrall stated, it became apparent there were several other casinos that started building hotels and concern arose whether it was feasible for Boomtown to build a hotel.

¶16. The record clearly supports the trial court's finding that there was no present misrepresentation of fact. Whether Boomtown had enough money at the time to construct the hotel or thought they might acquire enough money is not the question at issue. Any issues regarding money to build a hotel were in no way related to dealings between Eric, Ray, or Boomtown. In fact, the very statement Ray contends induced him to sign the partnership agreement, "the money is in the bank," was not directed at Ray. It was stated at a hearing before the Mississippi Gaming Commission. The ultimate "fact" Ray contends that Boomtown

negligently misrepresented and that Ray contends induced him to sign the partnership agreement was that Boomtown was planning to build a hotel in the future. Without evidence that there was a present misrepresentation of fact Ray's allegations fail as a matter of law. Unlike negligent misrepresentation, an intentional fraud claim may be based on a statement involving the speaker's future conduct. *See **Bank of Shaw v. Posey***, 573 So. 2d 1355, 1360 (Miss. 1990).

*Fraudulent Representation*

¶17. Ray states that the first element of a claim of intentional fraud or fraudulent representation may consist of a representation of the speaker's future conduct when the representation is made with the present undisclosed intention not to undertake the conduct. ***Crystal Springs,*** 554 So. 2d at 886. Ray misstated the actual wording in ***Crystal Springs***. The following is the actual rule of law:

> [T]he rule is well settled that "fraudulent representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, as facts, and cannot consist of promises, *except in some cases when a contractual promise is made with the present undisclosed intention of not performing it.*"

***Id.*** *See also **Spragins***, 605 So. 2d at 781.

¶18. Ray's claim for fraudulent representation has no merit since none of Boomtown's statements of intention to build the hotel were regarded as contractual promises. Ray does not contend that Boomtown orally promised that Boomtown would build a hotel. *See **Bank of Shaw***, 573 So. 2d 1360. The contracts executed by Ray, Eric, and Boomtown all consisted of fully integrated, written contracts.

¶19. In ***Spragins***, this Court explained that:

> The evidence on the record *sub judice* does not support a claim of fraudulent misrepresentation by clear and convincing evidence. Sunburst Bank allegedly made promises to buy Refuge Plantation. This is a promise of future conduct clearly excluded from recovery under an intentional misrepresentation claim.

***Spragins***, 605 So. 2d at 781.

¶20. Ray did not offer any evidence which would suggest that Boomtown had no intention of building a hotel and that it fraudulently represented that it intended to build a hotel to induce Ray to sign the partnership agreement. On the contrary, the record suggests that Eric was aware that Boomtown wanted to build a hotel. Nothing in the record suggests that Boomtown ever used the hotel to induce Eric and Ray to sign any of the previous agreements between the parties. That fact remains that it truly intended and wanted to build a hotel. The May 26, 1994, letter to the Mississippi Gaming Commission clearly evidences Boomtown's intent to build the hotel. Sumrall's video deposition testimony that there was insufficient funds at the time to construct a hotel is not relevant to a determination of Boomtown's future intent.

## II. WHETHER THE CIRCUIT COURT ERRED IN EXCLUDING AN AUDIOTAPE OF BOOMTOWN'S MISREPRESENTATIONS.

¶21. A decision of the trial court admitting or excluding evidence must be upheld unless there is an abuse of discretion. ***Walker v. Graham***, 582 So.2d 431, 432 (Miss. 1991). Ray offered into evidence an

audiotape which contained portions of the public hearing before the Mississippi Gaming Commission. Boomtown objected to the tape on the bases that it was muffled, incomplete, cut out at times, contained inadmissible statements of gaming commissioners, and the declarant in the tape was available to testify. The trial judge listened to the tape and ruled that the tape would be inadmissible unless there was a contradiction of any statements in the tape. Three witness testified as to what was said in the audiotape.

¶22. Based on a review of the record, this Court holds that it was not an abuse of discretion to exclude the audiotape. The record reflects that Parrott's testimony did not contradict his statements in the audiotape. Furthermore, Ray did not contend at trial that what Parrott said on audiotape was different or contradictory, and Ray does not now contend that what Parrott said on audiotape was contradictory. For these reasons, we find it was not an abuse of discretion by the trial court to exclude the audiotape.

### III. WHETHER THE CIRCUIT COURT ERRED IN FAILING TO DISQUALIFY ONE OF BOOMTOWN'S TRIAL ATTORNEYS, GERALD BLESSEY, WHO HAD ALSO SERVED AS COUNSEL IN THE RE-ZONING APPLICATION OF THE PROPERTY AT ISSUE IN THIS CASE.

¶23. A full evidentiary hearing was conducted on Ray's motion to disqualify Gerald Blessey as co-counsel for Boomtown. The record shows that Blessey was only involved in the re-zoning of the property and was not involved in any negotiations or discussions between the parties regarding the terms and conditions of the ground lease or other lease documents. Ray states that Blessey served as his counsel in the re-zoning application. This in not accurate. Blessey actually represented Boomtown in the re-zoning application, and Jim Keith represented the Skrmettas at the time. The record shows that there was no actual conflict established. Blessey did help Eric form a corporation in 1992. However, Eric is not a party to this action. Furthermore, there is no evidence that Blessey, in his previous work for Eric, obtained or learned any confidential information involving matters in this case. *See Shorter v. Shorter*, 740 So.2d 352, 355 (Miss. Ct. App. 1999).

¶24. Boomtown also raises several issues which it raised in its motion for directed verdict. First, Boomtown contends that Ray assigned all his rights to Eric when he was assigned the 15% partnership interest and therefore his claims are barred because he lacks standing. Second, Boomtown contends that Eric, as Ray's assignee, litigated the same fraud and negligent misrepresentation claims in the arbitration proceeding that Ray attempts to litigate in this case. Therefore, Boomtown argues that it has satisfied the legal requirements of payment, accord, and satisfaction by paying $400,000.00 to Eric in settlement of that arbitration. Third, Boomtown argues that Ray's claims are barred by res judicata, since the subject matter in Eric's arbitration was identical to the subject matter in Ray's claim. These issues were not considered by the trial judge; therefore, there is no need to consider them here.

### CONCLUSION

¶25. Ray failed to prove the essential elements of his claims for negligent misrepresentation and fraudulent representation. Ray presents no other issues that would merit a reversal of the trial court's judgment. Therefore, this Court affirms the judgment of the Harrison County Circuit Court.

¶26. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, CARLSON AND**

**GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**