# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-60137
Summary Calendar

PETE REDECOP, doing business as Delta
Z Farms, FRANK REDECOP; ABE REDECOP;
JACOB REDECOP; ISAAC REDECOP; SAILBOAT
PLANTATION, INC., a Mississippi Corporation
partners doing business as Delta Z Farms,

Plaintiffs-Appellees,

v.

BILL GERBER; GERBER INSURANCE
AGENCY, INC.,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:04-CV-62

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants Bill Gerber and Gerber Insurance Agency, Inc.

("the Gerbers") appeal from a jury verdict entered in favor of Plaintiffs-Appellees

Pete Redecop, Frank Redecop, Abe Redecop, Jacob Redecop, Isaac Redecop, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Sailboat Plantation, Inc., doing business as Delta Z Farms ("the Redecops"), as well as the denial of the Gerbers post trial motion for judgment as a matter of law, or alternatively, motion for new trial. For the following reasons, we AFFIRM.

I.      Factual and Procedural History

The Redecops, cotton and soybean farmers doing business as Delta Z Farms in the Mississippi Delta, owned ten farming units in Washington County. They were required by their lender to purchase multi-peril crop insurance on their farming units. The insurance costs were subsidized by the government. Under the federal multi-peril crop insurance program a farmer may purchase insurance which guarantees a certain pound per acre yield of a particular crop. If, as was the case here, the parcel did not have farming history sufficient to establish an average guaranteed yield, then the guaranteed yield is set by the government, this is knows as the T-yield. It is possible for the government to apply a "cup" to the T-yield, meaning the government will limit the drop in the T-yield to a certain percentage of the previous year's yield. Bill Gerber was the owner of Gerber Insurance Agency, Inc. ("Gerber Insurance"), which sold multi-peril crop insurance policies to cotton and soybean farmers.

On February 15, 2002, the Redecops purchased crop insurance through the Gerbers after a series of discussions about the amount for which the Redecops would be insured if they purchased insurance from the Gerbers. There is a fact dispute as to whether Bill Gerber guaranteed the Gerbers coverage at 687 pounds per yield, 69 pounds higher than the pounds per yield set by the Government. After the Redecops suffered crop losses as a result of inclement weather conditions, they became aware that they were only insured for 618 pounds per acre.

Thereafter, the Redecops filed suit, alleging that the Gerbers negligently misrepresented to them the amount for which they were covered under the

policy. At the close of evidence, the Gerbers moved for judgment as a matter of law, which the district court denied. The jury then returned a verdict in favor of the Redecops in the amount of $295,438.87, finding that the Gerbers had negligently misrepresented to the Redecops that they were covered for 687 pounds per yield. The Gerbers filed a renewed motion for judgment as a matter of law, or in the alternative for remittur or new trial. The district court denied the Gerber's renewed motion, stating that the Redecops had presented sufficient evidence for the jury to find that the Gerbers had negligently misrepresented their coverage amount and that the case came down to a credibility determination. The Gerbers timely appealed.

II. Discussion

On appeal, the Gerbers urge two points of error. First, they argue that the district court erred in finding that the Redecops succeeded in proving negligent misrepresentation as a matter of law. Second, they contend that there was insufficient evidence to support the finding of damages in the court below. We address each argument in turn.

We review the district court's ruling on a motion for judgment as a matter of law ("JMOL") de novo. Lewis v. Bank of Am., 343 F.3d 540 (5th Cir. 2003). We must affirm unless "there is no legally sufficient evidentiary basis for a reasonable jury[s]" verdict. Fed. R. Civ. P. 50(a). In reviewing the trial record, we draw all reasonable inferences and resolve all credibility determinations in favor of the non-moving party. Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 838 (5th Cir.2004).

A. Negligent Misrepresentation

Under Mississippi Law, in order to recover under a negligent misrepresentation claim, a party must prove by a preponderance of the evidence that: (1) there was a misrepresentation (or omission) concerning a past or present fact; (2) the misrepresentation was material; (3) the misrepresentation

was the product of negligence, i.e., the person failed to exercise reasonable care; (4) they reasonably relied on the misrepresentation; and (5) they suffered damages as a direct and proximate result of the reliance. Spragins v. Sunburst Bank, 605 So.2d 777, 780 (Miss. 1992). The Gerber's contend that the Redecop's did not prove negligent misrepresentation because (1) the alleged misrepresentation did not involve a past or present fact, and (2) the Redecops did not reasonably rely on it.

The first element of negligent misrepresentation, misrepresentation of a fact, must concern a past or present fact, rather than a promise of future conduct. Spragins, 605 So.2d at 780 (citation omitted); see also Bank of Shaw v. Posey, 573 So.2d 1355, 1360-61 (Miss. 1990) (holding no negligent misrepresentation where bank allegedly promised to loan money to plaintiffs because the alleged misrepresentation did not relate to past or presently existing); Berkline Corp. v. Bank of Miss., 453 So.2d 699, 702 (Miss. 1984)(holding plaintiffs had established the first element of negligent misrepresentation where plaintiffs alleged that a bank misrepresented that a company was credit worthy).

Turning to the facts of this case, the evidence at trial consisted primarily of testimony from Bill Gerber and Pete Redecop, both of whom were involved in the discussions surrounding the policy at issue in this case. The Gerbers argue that the first element was not met as a matter of law because the misrepresentation alleged by the Redecops did not concern a past or present fact as required under Mississippi law. In support of this contention, they point to testimony by Bill Gerber in which he states that he told the Redecops that the Government might apply a ten-percent cup. Bill Gerber also testified that he never guaranteed the Redecops that the Government would do so. The Gerbers argue, however, that even if Bill Gerber had represented to the Redecops that the Government would apply a ten-percent cup, because such an act would

constitute a future act and/or opinion, the plaintiffs have failed to meet the first element of negligent misrepresentation.

Conversely, the Redecops argue that the alleged misrepresentation was not whether the Government would apply a ten-percent cup. Rather, they contend that the misrepresentation was about the amount of crop insurance they purchased and how much insurance was available to them in the event of crop loss. Pete Redecop testified that Bill Gerber informed him and his brothers that they were covered at an amount equal to ten percent lower than the coverage they had the previous year, or 687 pounds per yield. Pete Redecop also testified that when he finally received and reviewed the policy, he called the Gerbers to inform them that the policy indicated that they were insured for only 400 pounds per yield. He was told that the amount would be adjusted. Subsequently, after the crops were lost to rain and wind damage, Pete Redecop testified that the Gerbers again assured him on at least two occasions that the amount of insurance coverage would be adjusted.

Based on the evidence presented at trial, we cannot conclude that the district court erred in determining that as a matter of law, the Redecops made out the first element of negligent misrepresentation. There was competing testimony submitted from Bill Gerber and Pete Redecop. The jury believed Pete Redecops' statement that Bill Gerber guaranteed the Redecops that they were covered at an amount equal to ten percent lower than the coverage they had the previous year, or 687 pounds per yield. Thus, weighing the credibility determination in favor of the non-moving party, we conclude that there was sufficient evidence to support the jury's determination.

Second, the Gerbers argue that the Redecops did not reasonably rely on the alleged misrepresentation. In support of this proposition, the Gerbers cite to Mills v. Sam's Club, Inc., 2006 WL 3375254 (S.D. Miss. 2006)(citing Thompson v. Chick-Fil-A, Inc., 923 So.2d 1049 (Miss.Ct.App. 2006)), which held

that in order to show reliance, a plaintiff must show that she "had been induced by the conduct of another to do something different from what would otherwise have been done." Id.

The Gerbers have not presented any record evidence to support their claim that this standard has not been met. Here, the Redecops do not dispute the fact that crop insurance was required, rather they argue that they relied on Bill Gerber's representation that they were insured for 687 pounds per yield in deciding to purchase coverage from the Gerbers. Pete Redecop testified that he was offered insurance coverage at the same levels from another insurance agent, but he and his brothers decided to purchase insurance from Gerber Insurance based on the representation made to them by Bill Gerber. The Gerbers offered no evidence, other than Bill Gerber's testimony, to rebut Pete Redecops testimony.

Resolving all credibility determinations in favor of the Redecops, we hold that a reasonable jury could conclude that the Redecops reasonably relied on Bill Gerber's representations in deciding to purchase insurance from the Gerbers, rather than another company. Accordingly, the district court did not err in denying the Gerbers' motion for judgment as a matter of law on the issue of reliance.

B.    Damages

The Gerbers contend that there was insufficient evidence to prove that the Redecops suffered damages. First, the Gerbers argue that because insurance was unavailable at the level at which the Redecops thought they were insured, they cannot recover damages based on what "unattainable insurance would have paid." However, in light of Pete Redecop's testimony that he turned down insurance from another company offering at 687 pounds per yield, for the same reasons that the Gerber's reliance argument fails, so must their damages argument.

Second, the Gerbers argue that they were wrongfully held liable for Ace Property & Casualty Insurance Company's ("Ace Insurance") failure to pay. The Gerbers argue that Ace Insurance failed to pay a portion of the Redecops' claims due to the Redecops' comparative negligence. However, as noted by the district court, the Gerbers presented essentially no evidence at trial to substantiate this claim. Thus, there is insufficient evidence in the record before us to support the Gerbers' contention that the Redecops' pay out from Ace Insurance was lower through some fault of the Redecops. Accordingly, this argument fails.

Finally, the Gerbers contend that the district court allowed an incorrect measure of damages. In particular, they argue that the district court awarded the Redecops benefit of the bargain damages, rather than limiting the Redecops recovery to their actual losses. Because the Mississippi Supreme Court has yet to address this issue, this court is required to follow the rule we believe the Mississippi Supreme Court would adopt. Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co., 335 F.3d 429, 435 (5th Cir.2003). "[I]n making [our] Erie guess, we consider, among other sources, treatises . . . decisions from other jurisdictions . . . and the majority rule." Id. (internal quotation marks omitted).

We find the Restatement (Second) of Torts § 552B (2007) to be most instructive on this issue.[1] Section 552B provides that:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
> > (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

---

[1] Moreover, the Mississippi Supreme Court has previously relied on the Restatement (Second) of Torts in a case involving misrepresentation. See Guastella v. Wardell, 198 So. 2d 227, 230 (Miss. 1967), citing Restatement (Second) of Torts § 551 (1965).

> (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

Based on Section 552B, we agree that a plaintiff is not entitled to the benefit of the bargain measure of damages. Instead, when recovering on a claim for negligent misrepresentation, a plaintiff may only recover his pecuniary or economic losses.

Accordingly, the question here is whether the district court limited the Redecops' damages to their pecuniary losses. Damages were calculated by subtracting the actual production in terms of pounds from the guaranteed pounds under the policy in order to determine the crop loss in terms of pounds. The amount of crop loss was then multiplied by the guaranteed price. Finally, the amount paid out by Ace on the policy was subtracted from that amount, resulting in $295,438.87. These damages constitute the Redecops' actual economic loss due to the Gerbers' negligent misrepresentation. Therefore, the Gerbers have failed to show that the jury's determination of damages was improper.

III. Conclusion

For the reasons stated above, we AFFIRM.